Case 2:19-cv-00391   Document 18   Filed on 07/24/20 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
July 24, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSE ROMERO PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-391 |
| | § | |
| BROOKS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

# ORDER

Plaintiff Jose Romero Perez filed this action against his former employer, Defendant Brooks County, Texas, alleging causes of action arising from his termination after suffering on-the-job injuries. D.E. 1, 14. Before the Court is Defendant's Rule 12 Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim. D.E. 15. Plaintiff responded (D.E. 16) and Defendant replied (D.E. 17). For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to meritless claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). The requirement

that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible. *Id*. at 557. The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In dismissing the claim in *Iqbal*, the Supreme Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." Id. at 681.

**FACTS**

Taking the facts alleged as true pursuant to the standard of review, the salient events set out in Plaintiff's second amended complaint form the following timeline:

| | |
|---|---|
| February 1, 2002 | Brooks County hired Plaintiff to work as a full-time operator for its Road and Bridge Department. |
| February 2003 | Plaintiff sustained an on-the-job injury to his back while operating a backhoe. Plaintiff's supervisor, Ruben Gutierrez, filled out an injury report and told him to seek medical attention. |
| | Pursuant to his orthopedic surgeon's treatment plan, Plaintiff was off work for two months for physical therapy. |
| | Plaintiff declined surgery for his herniated disc. |
| Two Months Later | Plaintiff returned to work for the Road and Bridge Department and, after sitting too long as a driver-operator, he complained of back pain. |
| The Next Day | Gutierrez assigned Plaintiff to light duty as a spotter at the County Landfill, where his duties included checking trash, directing others as to where to put the trash, and infrequently operating a backhoe. |
| The Next Several Years | Plaintiff continued to work at the County Landfill, through a succession of supervisors, including Alan Hernandez and ending with David Guerra. |
| June 9, 2017 | Plaintiff experienced an on-the-job injury to his right shoulder. He reported the injury to Supervisor Hernandez and filed a Texas workers' compensation claim. |
| The Next Several Months | Plaintiff was under the care of Doctor Pechero and the Rio Grande Valley Orthopedic Center. He was examined, tested, and diagnosed with a physiological condition affecting his neurological and ambulatory systems. This has an effect on his ability to perform certain manual tasks and is at least part of the cause of a rotator cuff problem. He was treated for this, with appropriate periodic work status reports being provided and signed by his physician. |
| September 2017 | Plaintiff had surgery to repair four torn ligaments from his June 9, 2017 injury. |
| March 9, 2018 | Plaintiff continued with follow-up appointments with the Orthopedic Center and the resulting series of status reports indicated that his injury had prevented his return to work and that he could not return until May 4, 2018. |

| | |
|---|---|
| April 3, 2018 | A Senior Workers' Compensation Adjuster for the Texas Association of Counties Risk Management Pool began a review of Plaintiff's injury and treatment, communicating with Defendant's Human Resources (HR) representative regarding an intention to seek an independent medical examination. |
| May 1, 2018 | There were no medical findings that Plaintiff had healed from his June 9, 2017 injury. Nevertheless, he claims that, despite his medical condition and failure to return to work, he was able to perform the essential functions of his job as a spotter at the County Landfill. |
| First Week of May 2018 | Plaintiff had an MRI at the Orthopedic Center, which indicated that he would need a second shoulder surgery and that he could not return to work until May 21, 2018. |
| May 21, 2018 | Plaintiff obtained another status report signed by his physician, indicating that he could not return to work until August 20, 2018. |
| May 23, 2018 | Supervisor Guerra contacted Plaintiff and instructed him to report to work for the Road and Bridge Department (not the County Landfill) on May 29, 2018. |
| | As a result of the unexplained change in assignment and supervisor, Plaintiff was concerned that his prior light duty accommodation had been rescinded. Plaintiff requested an accommodation from Defendant, but his request was refused by its supervisory staff. |
| May 24, 2018 | The adjuster for the Risk Management Pool informed Defendant's HR department that Plaintiff's recent MRI confirmed a recurrent full thickness tear associated with his shoulder injury. The plan at that time was to hold off on the independent medical examination and, instead, obtain peer review of Plaintiff's medical records. |
| | Plaintiff confronted Supervisor Guerra about an unverified, unsubstantiated, and unsigned "amended" status report on which Guerra was apparently relying in formulating his directive that Plaintiff was to return to work. And Plaintiff disputed a manufactured claim that he had stated that he would injure himself (as he had never said such a thing and was already injured). |

|  |  |
|---|---|
|  | Plaintiff went to Guerra's office and produced his May 21, 2018 status report, revealing work restrictions through August 20, 2018. In particular, Plaintiff's work restrictions included no pushing, pulling, overhead reaching, lifting, or carrying. Guerra made a copy of it and indicated that there was something wrong with the documentation of Plaintiff's injury, but he nevertheless insisted that Plaintiff return to work on May 29, 2018. |
| May 29, 2018 | Plaintiff reported to work and was assigned to pick up trash while carrying a bucket and a trash grabber. Plaintiff asked Guerra to call his superiors to ask why he was being put to work despite his unresolved injury. After working several hours, Plaintiff's right hand and wrist became noticeably swollen. Before clocking out for lunch, he reported his condition to Guerra. About one hour after Plaintiff clocked back in after lunch, Guerra took him to HR where his employment was terminated with allegations that Plaintiff had followed through on a threat to hurt himself. |
| June 4, 2018 | The Risk Management Pool adjuster informed HR that Plaintiff was in need of additional surgery and that temporary income benefits would continue. |
| August 21, 2018 | Noting that the last status report indicated that Plaintiff could return to work on August 20, 2018, HR emailed the Risk Management Pool adjuster about the DWC Form 1. |
| September 6, 2018 | Plaintiff had a surgical procedure involving "right shoulder subacromial decompressions with RCT repair." |
| November 18, 2018 | Plaintiff filed his EEOC complaint. |
| September 25, 2019 | The EEOC provided Plaintiff with a right to sue letter. |

## DISCUSSION

Defendant complains at the outset of its motion that, while Plaintiff's second amended complaint sets out five numbered recitations of claims, it discerns only three causes of action. Comparing the amended complaint, motion to dismiss, and response, the Court reads Plaintiff as attempting to claim:

1. Disability discrimination in the form of a violation of equal rights under unspecified law, which could include the Equal Protection Clause of the Fourteenth Amendment (D.E. 14, ¶¶ 48-52);

2. Disability discrimination under the basic anti-discrimination provision of the Americans with Disabilities Act (ADA), § 12112(a) (D.E. 14, ¶¶ 48-52);

3. Disability discrimination in the form of failure to accommodate Plaintiff's disability under the ADA, §§ 12111(9), 12112(b) (D.E. 14, ¶¶ 53-58; D.E. 15, p. 2; D.E. 16, ¶¶ 11, 14);

4. Disability discrimination in the form of failure to engage in an interactive process to generate an accommodation for Plaintiff's disability (D.E. 14, ¶ 33);

5. Retaliation for complaints made to Supervisor Guerra upon being ordered back to work (D.E. 14, ¶¶ 59-63; D.E. 15, p.5; D.E. 16, ¶ 17);

6. Deliberate indifference to Plaintiff's unspecified constitutional rights (D.E. 14, ¶¶ 64-66; D.E. 16, ¶ 17); and

7. Violation of Plaintiff's First Amendment rights, through 42 U.S.C. § 1983 (D.E. 14, ¶¶ 67-69; D.E. 15, p.1).

The viability of each is discussed below.

**A. Disability Discrimination in the Form of a Violation of Equal Protection**

On its face, Plaintiff's first cause of action is pled in the form of an equal protection challenge under the Fourteenth Amendment, although it does not use those terms. He claims that his disability placed him in a protected class and that he was treated differently than those who were similarly situated outside the protected class. D.E. 14, p. 15. Setting aside Plaintiff's failure to name a single similarly situated comparator, it is clear that Plaintiff has not alleged a viable equal protection claim under the United States Constitution.

Disability is not a class that supports an equal protection challenge.

> [T]he result of *Cleburne* is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. They could quite hardheadedly—and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001) (referring to *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). To the extent that Plaintiff seeks to raise an equal protection challenge, the motion is GRANTED IN PART and the claim is DISMISSED.

## B. Disability Discrimination under ADA § 12112(a)

The "positive law" that protects a disabled individual from employment discrimination is embodied in the ADA. The general rules states:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). When relying on circumstantial evidence of discrimination,[1] a prima facie case involves four elements: (1) plaintiff is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment

---

[1] Plaintiff has pled his disability discrimination claim in the form prescribed for a claim based on circumstantial evidence. Such a claim uses the *McDonnell Douglas* burden-shifting framework. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). He does not plead or argue a direct evidence discrimination claim.

7 / 16

action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *Gowesky*, 321 F.3d at 511.

Mindful that this case is at the pleading stage, the Court liberally construes the second amended complaint to satisfy the first and third elements of his discrimination claim. He pleads that he has a physical impairment that substantially limits his ability to perform manual tasks, lift, and work and that affects his neurological and ambulatory function. *See* 42 U.S.C. § 12102(1)(A) & (2). He suffered termination immediately after complaining that his disability was exacerbated by his work assignment, which is a classic adverse employment action. *See*, 42 U.S.C. § 12112(a); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009).

The second and fourth elements, however, are not adequately pled. With respect to whether he is qualified for the job, his pleading is conclusory and contradicted by his other factual pleadings. Specifically, he pleads:

- He has a physiological condition that makes him prone to physical injury;
- He sustained a major back injury while assigned to the Road and Bridge Department;
- He sustained a major shoulder injury while assigned to light duty at the County Landfill;
- He had not yet recovered from the shoulder injury and thus could not return to his County Landfill job;
- He vehemently objected to reassignment to the Road and Bridge Department because he could not perform the essential functions of the job there; and

- In the course of working one-half day in the Road and Bridge Department, he exacerbated his shoulder injury, when he should not have been working at all because of his disability.

D.E. 14. These are not facts that would support a finding that Plaintiff was a qualified individual for any of Defendant's relevant positions.

To be qualified, Plaintiff must, with or without reasonable accommodation, be able to perform the essential functions of the employment position that he holds or desires. 42 U.S.C. § 12111(8). Plaintiff pleads that he cannot perform the essential functions of work in the Road and Bridge Department and he has actively resisted his assignment to that department. He further pleads that, even with his accommodation of light duty with the County Landfill, he got injured performing the basic functions of the job and was not medically released to return to work.

The Supreme Court has defined an otherwise qualified person as "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979). "The definition of a qualified handicapped individual also includes a personal safety requirement—an otherwise qualified handicapped individual is defined as one who 'can perform the essential functions of the position in question without endangering the health and safety of the individual or others.'" *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993) (quoting *Chiari v. City of League City*, 920 F.2d 311, 317 (5th Cir. 1991)).

Plaintiff does not allege that he can safely perform the essential functions of either position. Rather, he has pled that, while performing those essential functions, he was and

will continue to be injured because of his underlying disability. He has affirmatively pled himself out of the required element of being qualified.

Last, as noted above, Plaintiff does not name a comparator or describe other circumstances to satisfy the fourth element: that he was replaced by, or treated less favorably than, a non-disabled employee. Thus, Plaintiff has failed to plead a prima facie case of disability discrimination under ADA § 12112(a). The motion is GRANTED IN PART and the Court DISMISSES Plaintiff's claim for disability discrimination by disparate treatment.

### C. Disability Discrimination Under ADA § 12112(b): Failure to Accommodate/Failure to Engage in Interactive Process

In addition to the basic disability discrimination case addressed above, an individual can claim discrimination in the form of a failure to accommodate a disability under ADA § 12112(b):

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . .
>
> (5)(A) *not making reasonable accommodations* to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

>> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on ***the need of such covered entity to make reasonable accommodation*** to the physical or mental impairments of the employee or applicant;
>
> . . . .

42 U.S.C. § 12112 (emphasis added). The elements of a failure to accommodate claim are: (1) plaintiff is a qualified individual with a disability; (2) defendant knew of the disability and its consequential limitations; and (3) defendant failed to reasonably accommodate those known limitations. *Anderson v. Harrison Cnty., Miss.*, 639 Fed. App'x 1010, 1015 (5th Cir. 2016) (citing *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).

As noted above, Plaintiff has not pled that he is a qualified individual. In connection with his failure-to-accommodate claim, he appears to imply that he would be qualified if extended a reasonable accommodation. After all, "The term 'qualified individual' means an individual who, ***with or without reasonable accommodation***, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added).

In that regard, Defendant challenges Plaintiff's pleadings as failing to allege that (a) he made a request for an accommodation[2] and (b) a specific reasonable accommodation was available. These are issues on which Plaintiff bears the burden of

---

[2] When an employee's limitations caused by a disability are not "open and obvious" to the employer, it is the employee's responsibility to notify the employer of the limitations and suggest a reasonable accommodation. *Chevron*, 570 F.3d at 621 (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir.1996)). We need not be concerned with this rule because, whether or not Plaintiff's disability was open and obvious, he did plead that he made the request for an accommodation.

proof. *See generally*, *Johnson v. Gambrinus Co.*, 116 F.3d 1052, 1059 (5th Cir. 1997). While he pled that he requested an accommodation at the time that his supervisor required him to return to work and then terminated him, he did not plead any particular reasonable accommodation that would render him qualified for the position. The only accommodation he mentions is the transfer to the County Landfill, which was insufficient—by facts apparent in his own pleadings—to qualify him for work. And requesting an indefinite amount of time off (paid or unpaid) is not a reasonable accommodation. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). So Plaintiff has not pled a failure to accommodate. The motion is GRANTED IN PART and that claim is DISMISSED.

Plaintiff contends that his allegations that Defendant failed to engage in an interactive fact-gathering process to generate a reasonable accommodation is a separate claim. This position is supported by *Gardea v. DialAmerica Mktg., Inc*., EP-12-CV-158-KC, 2013 WL 1855794, at *6 (W.D. Tex. Apr. 30, 2013). "Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that together they can determine what reasonable accommodations might be available." *Chevron*, 570 F.3d at 622.

Defendant has failed to address this as a separate claim. Neither has Defendant briefed any basis for not treating it as a separate claim or for treating the request as futile. For that reason, the motion is DENIED IN PART and the Court RETAINS Plaintiff's claim for failure to engage in an interactive process toward an accommodation of his disability.

### D. Retaliation for Complaints of Discrimination

The elements of a claim for retaliation under the ADA are that (1) plaintiff participated in a protected activity; (2) defendant took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action." *Clark v. Charter Commc'ns, L.L.C.*, 775 Fed. App'x 764, 767 (5th Cir. 2019) (citing *Feist*, 730 F.3d at 454). Plaintiff has not set out the specific facts on which he relies for his retaliation claim. Reading his complaint generously, there are three different events that could conceivably trigger a retaliation claim:

- He filed a workers' compensation claim for his February 2003 back injury;
- He filed a workers' compensation claim for his June 2017 shoulder injury; and
- He objected to the May 23, 2018 order to return to work.

D.E. 14.

As a result of both workers' compensation claims, Plaintiff was directed to seek medical attention and received time off from work. Nothing in the pleading or briefing asserts an adverse employment action causally related to either of his compensation claims. In fact, his complaint states, "Plaintiff's employment with Brooks County was not placed in jeopardy until after May 23, 2018 and May 24, 2018 when Plaintiff questioned and challenged the May 23, 2018 notice to return to work." D.E. 14, ¶ 44.

That leaves the objection to the order to return to work. Defendant challenges the retaliation claim arising from this event on the basis that Plaintiff complains of unspecified policies, his allegations are conclusory, and he fails to show how his

13 / 16

complaints amount to a protected activity. Defendant reads the complaint too narrowly, in violation of the standard of review. Plaintiff's outcry included not only objections based on Defendant's own policies, but the fact that he was not yet medically released to return to his job and the work order involved being placed in a position with greater physical demands than the position he had left. Plaintiff clearly pleads that he wanted to avoid returning to the Road and Bridge Department and to remain in his less demanding job at the County Landfill.

This outcry can be construed as a request for an accommodation. Requesting an accommodation is a protected activity. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 & n.3 (5th Cir. 2007). As mentioned, termination is an adverse employment action—a proposition Defendant does not contest. And while Defendant challenges the pleading of a causal connection, it is clear from the allegations that the termination followed just a few days after the protected activity, which is sufficient to support causation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that a "very close" temporal relationship between the protected activity and the adverse action can support a prima facie case of causation, citing cases with temporal proximity of three to four months as sufficient).

Thus, in the context of Rule 12(b)(6), the Court finds that Plaintiff has adequately pled a cause of action for retaliation based on his objection to returning to work in May 2018. The motion is DENIED IN PART and the Court RETAINS the retaliation claim.

### E. First Amendment Violations

The outcry does not fare as well in the context of a First Amendment claim. A prima facie free-speech retaliation claim requires pleading "four elements: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse employment action." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).

While satisfying the first and fourth elements, Plaintiff's pleading does not address any public concern as required by the second element. Neither does it suggest that any public concern outweighs the employer's legitimate interests regarding its workforce as required by the third element. The issue was a private one: whether it was appropriate to order Plaintiff back to work before he was medically released and whether the position to which he would return should involve some accommodation of his particular physical needs. This failure to meet the second and third requirements for this First Amendment claim was not addressed in Plaintiff's response to the motion to dismiss. In fact, there was no mention of this claim whatsoever in his defense of the complaint.

Plaintiff has failed to state a First Amendment claim. He has cited no other constitutional claim, and thereby has failed to state a claim under 42 U.S.C. § 1983. Consequently, the motion is GRANTED IN PART and the Court DISMISSES the claims that he lists in his second amended complaint as his fourth and fifth causes of action. D.E. 14.

## CONCLUSION

For the reasons set out above, the motion to dismiss (D.E. 15) is **GRANTED IN PART** and the Court **DISMISSES**: (1) Plaintiff's claim for disability discrimination to the extent that it is couched in terms of equal protection; (2) Plaintiff's claim for disability discrimination under ADA § 12112(a); (3) Plaintiff's claim for failure to accommodate his disability under ADA § 12112(b); (4) Plaintiff's claim for retaliation based on his exercise of free speech; and (5) Plaintiff's unspecified constitutional claims brought under 42 U.S.C. § 1983. The motion is **DENIED IN PART** and the Court **RETAINS**: (1) Plaintiff's claim for failure to engage in an interactive process to generate potential accommodations for his disability; and (2) Plaintiff's claim for retaliation for seeking an accommodation for his disability. The Court **DENIES** without prejudice Plaintiff's general request for leave to amend his complaint because Plaintiff has failed to apprise the Court of the substance of any intended amendment so as to demonstrate that it would not be futile.

ORDERED this 24th day of July, 2020.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE